**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

M.R., by her parent and next friend, L.R., *et al.*,

       Plaintiffs,

    v.                             Civil Action No. 25-0556 (CKK)

District of Columbia,

       Defendant.

---

**MEMORANDUM OPINION**
(June 3, 2025)

A student and her parent filed this action against the District of Columbia to appeal an administrative decision about the student's publicly funded placement at a private school that serves students with disabilities. The student and parent then filed a Motion for a Preliminary Injunction to secure the student's placement at that private school until the Court resolves this case. *See* Pls.' Mot., ECF No. 10. The District opposes the Plaintiffs' Motion, and it has filed a Cross-Motion for a Preliminary Injunction seeking a ruling that the student is not entitled to continued public funding for her private placement. *See* Def.'s Opp'n and Mot., ECF Nos. 12–13. The Plaintiffs oppose the District's Cross-Motion. *See* Pls.' Opp'n and Reply, ECF Nos. 15–16. Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court shall **GRANT** the Plaintiffs' Motion and **DENY** the Defendant's Cross-Motion.

---

[1] The Court's consideration has focused on the following documents, including the attachments and exhibits thereto:
- The Plaintiffs' Complaint ("Compl."), ECF No. 1;
- The Plaintiffs' Motion for a Preliminary Injunction ("Pls.' Mot."), ECF No. 10;
- The Defendant's Combined Opposition to the Plaintiffs' Motion for a Preliminary Injunction and Cross-Motion for a Preliminary Injunction ("Defs.' Opp'n and Mot."), ECF Nos. 12–13;
- The Plaintiffs' Combined Opposition to the Defendant's Cross-Motion and Reply in Support of the Plaintiffs' Motion ("Pls.' Reply and Opp'n"), ECF Nos. 15–16; and
- The Defendant's Reply in Support of its Cross-Motion ("Def.'s Reply"), ECF No. 17.

In an exercise of its discretion, the Court concludes that oral argument is not necessary to the resolution of the issues pending before the Court. *See* LCvR 7(f).

# I. BACKGROUND

## A. Statutory Framework

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, provides federal funding to the District of Columbia, States, and United States territories for public education, subject to certain conditions.

One of these conditions is that recipients of federal funding must ensure that a "free appropriate public education is available to all children with disabilities." *See* 20 U.S.C. § 1412(a)(1). The "free appropriate public education" required by this condition is commonly known as a "FAPE." *See id.*

Another condition is that children with disabilities must, "[t]o the maximum extent appropriate," be "educated with children who are not disabled" and "remov[ed] . . . from the regular educational environment . . . only when the nature or severity of the disability of [the] child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." *Id.* § 1412(a)(5). This condition is known as the "least restrictive environment" requirement. *See id.*

The IDEA's "primary vehicle" for ensuring an appropriate public education for students with disabilities is the "individualized education program" ("IEP"). *See Honig v. Doe*, 484 U.S. 305, 311 (1988); 20 U.S.C. § 1414(d). Under the IDEA, a team including a student's parents, teachers, and school officials must meet at least once each year to discuss the student's performance, set goals, and identify services that the "local educational agency"—usually a school district—will provide to support the student in reaching those goals. *See* 20 U.S.C. § 1414(d). The IEP is the "written statement" of this assessment and plan. *See id.* § 1414(d)(1)(A)(i). This plan "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176,

204 (1982).  The IDEA requires that a State or local educational agency have an IEP in place "for each child with a disability in the agency's jurisdiction" at the beginning of each school year.  *Id.* § 1414(d)(2)(A).

Because Congress recognized that parents and school officials would sometimes disagree about what services should be included in an IEP and how those services should be implemented, the IDEA guarantees certain "procedural safeguards" for students with disabilities and their parents.  *Id.* § 1412(a)(6).  These safeguards include administrative review of, among other things, whether the services contemplated in an IEP and provided to the student amount to a "free appropriate public education."  *Id.* §§ 1412(a)(6), 1415(a).

The IDEA provides that "during the pendency of any proceedings" under its administrative-review provisions, "the child shall remain in the then-current educational placement of the child" unless the parents and the relevant State or local educational agency agree otherwise.[2] 20 U.S.C. § 1415(j).  This requirement, commonly called the "stay-put" provision, compels the relevant educational agency to preserve a child's "current educational placement" for the duration of administrative proceedings, including an appeal to a federal district court of an administrative decision following a due process hearing.  *Id.*; 34 C.F.R. § 300.518(a); *see Andersen by Andersen v. District of Columbia*, 877 F.2d 1018, 1023–24 (D.C. Cir. 1989).  An educational agency's obligation to maintain a placement "includes full payment for the program in which the student is placed."  *Wimbish v. District of Columbia*, 153 F. Supp. 3d 4, 10 (D.D.C. 2015) (EGS). A school district's failure to fund such a placement "constitutes grounds for stay-put injunctive relief."  *Id.*

---

[2] The IDEA's implementing regulations provide that if an administrative hearing officer "agrees with the child's parents that a change of placement is appropriate," the hearing officer's decision has the same effect as an agreement between the State and the parents to change the child's placement.  34 C.F.R. § 300.518(d).

### B.  Procedural History

M.R. is a sixteen-year-old student in this District who has been diagnosed with specific learning disabilities in reading, math, and written expression.  Compl., ECF No. 1, ¶¶ 4, 6–7; *see* Pls.' Ex. 1 (June 2017 Hearing Officer Determination ("HOD")), ECF No. 10-2 at 7–8.[3]

M.R. began her public education at a D.C. public school, where she repeated kindergarten. *See* Pls.' Ex. 30 (Feb. 2025 HOD), ECF No. 10-4 at 73.  In March 2016, when M.R. was in first grade, District of Columbia Public Schools ("DCPS") determined that she was eligible for special education services under the IDEA.  *See* June 2017 HOD, ECF No. 10-2 at 7–8; Pls.' Ex. 12, ECF No. 10-3 at 9.  In consultation with M.R.'s mother, L.R., DCPS developed an IEP for M.R. that called for her to receive 90 minutes of specialized instruction each week, in addition to general education and English language learner (ELL) services.  June 2017 HOD, ECF No. 10-2 at 8. DCPS immediately began implementing M.R.'s IEP at her public elementary school.  *Id.* at 8–9.

At the beginning of the next school year, L.R. enrolled M.R. at the Lab School of Washington, a private school that provides full-time special education services to students with disabilities.  Compl. ¶¶ 6, 9; June 2017 HOD, ECF No. 10-2 at 12.  DCPS did not agree to pay for the cost of M.R.'s attendance at the Lab School because it contended that the IEP prepared in March 2016 had offered M.R. a free appropriate public education ("FAPE") that could be delivered at a public elementary school.  *See* June 2017 HOD, ECF No. 10-2 at

DCPS later completed a new IEP for M.R. in March 2017.  *See* June 2017 HOD, ECF No. 10-2 at 13–14.  This IEP proposed 10 hours of specialized instruction for M.R. each week, along with additional hours of occupational therapy, speech-language therapy, and occupational therapy each month.  *Id.*  L.R. objected to this IEP, arguing that M.R.'s educational program should include

---

[3] Throughout this Memorandum Opinion, citations to the parties' exhibits refer to the automatic pagination in the ECF system, rather than to any internal pagination of the exhibits or the documents contained therein.

a greater amount of specialized instruction and that all services should be provided outside of the general education context. *Id.*

Meanwhile, L.R. filed an administrative complaint arguing that DCPS had denied M.R. a FAPE for the 2016–17 school year by not proposing adequate IEPs in either March 2016 or March 2017. *See* June 2017 HOD, ECF No. 10-2 at 1–3. As a remedy for that violation, L.R. sought reimbursement of the cost of M.R.'s attendance at the Lab School for the 2016–17 school year. *See id.*

On review of L.R.'s complaint regarding the 2016–17 school year, Hearing Officer Peter Vaden concluded that the March 2017 IEP had not provided M.R. a FAPE. June 2017 HOD, ECF No. 10-2 at 21, 23. Vaden found that although M.R. may not require "segregation from her nondisabled peers for the entire school day," there was persuasive evidence that M.R. "needs to be in a small classroom setting for at least her academic subjects" so that she can be "less distracted" and be "assured individualized support." *Id.* at 22–23. After weighing the parties' evidence, Vaden concluded that the March 2017 IEP did not offer M.R. a FAPE because it did not provide sufficient small-group instruction. *Id.* at 23. Vaden also concluded that the Lab School was an appropriate placement for M.R., that L.R. had not acted unreasonably by contesting the March 2017 IEP and sending M.R. to the Lab School, and that the equities weighed in favor of reimbursing the cost of M.R.'s attendance at the Lab School after the date of the IEP that he found had failed to offer her a FAPE. *Id.* at 23–25. Accordingly, Vaden found that L.R. was entitled to reimbursement for the cost of M.R.'s education at the Lab School after the date of the March 2017 IEP through the end of the 2016–17 school year. *Id.* at 25; *see also Leggett v. District of Columbia*, 793 F.3d 59, 66–67 (D.C. Cir. 2015) (explaining criteria for deciding when reimbursement of the costs of attending a private school is a proper remedy for failure to provide a FAPE). Vaden also

directed DCPS to convene M.R.'s IEP team "as soon as practicable" to review and revise her IEP to ensure that "all of [her] academic courses, with the exception of specials such as art and music, . . . be provided in a small classroom setting, outside general education." June 2017 HOD, ECF No. 10-2 at 25–26. Neither party appealed these aspects of Vaden's decision. *See* Pls.' Ex. 27 (Sept. 2024 Stay-Put Order), ECF No. 10-4 at 57.

However, Hearing Officer Vaden also concluded that M.R.'s previous IEP, which was completed in March 2016, had not denied M.R. a FAPE. Vaden noted that the appropriateness of an IEP depends on the information available at the time it is offered to the student. *See* June 2017 HOD, ECF No. 10-2 at 19; *see also Edward M.R. v. District of Columbia*, 128 F.4th 290, 294 (D.C. Cir. 2025) (explaining that courts "evaluate IEPs' substantive adequacy 'as of the time each IEP was created rather than with the benefit of hindsight'" (quoting *Z.B. v. District of Columbia*, 888 F.3d 515, 524 (D.C. Cir. 2018)). Vaden also noted that DCPS had limited information in March 2016 about M.R.'s specific need for a small classroom environment and that L.R. had not initially raised any concerns about the proposed IEP. June 2017 HOD, ECF No. 10-2 at 20–21. Under those circumstances, Vaden concluded that DCPS did not deny M.R. a FAPE by not revising the March 2016 IEP before the beginning of the 2016–17 school year. *Id.*

L.R. and M.R. appealed the adverse parts of Hearing Officer Vaden's June 2017 decision by filing a civil action against the District of Columbia in the District Court, urging the court to find that the March 2016 IEP had not offered M.R. a FAPE and requesting reimbursement of the entire cost of M.R.'s attendance at the Lab School during the 2016–17 school year. *See* Compl., *M.R. v. District of Columbia*, No. 17-cv-1565 (D.D.C. filed Aug. 2, 2017). During this appeal, DCPS agreed to a "stay-put" at the Lab School for the 2017–18 school year, recognizing that the Lab School was M.R.'s "current school" at that time. *See* Pls.' Ex. 2, ECF No. 10-2 at 27.

Magistrate Judge G. Michael Harvey ultimately issued a Report and Recommendation recommending that the District Court affirm Hearing Officer Vaden's conclusion that the March 2016 IEP had provided M.R. with a FAPE and deny the Plaintiffs' request for reimbursement for the cost of M.R.'s education at the Lab School for the several months of the 2016–17 school year that preceded the March 2017 IEP.  *See* Report and Recommendation, *M.R. v. District of Columbia*, No. 17-cv-1565, ECF No. 22 (D.D.C. July 6, 2018) (GMH).  Judge James E. Boasberg adopted Magistrate Judge Harvey's Report and Recommendation in full and entered judgment in favor of the District.  *See M.R. v. District of Columbia*, No. 17-cv-1565, ECF No. 23 (D.D.C. July 23, 2018) (JEB) (reproduced as Pls.' Ex. 3, ECF No. 10-2 at 28–29).

In August 2018, L.R. notified DCPS that she intended to keep M.R. at the Lab School for the 2018–19 school year and requested that DCPS fund her placement there.  *See* Pls.' Ex. 4 (Oct. 2018 Stay-Put Order), ECF No. 10-2 at 30–31.  DCPS declined.  *See id.*  L.R. requested an administrative hearing and invoked M.R.'s "stay-put" rights.  *Id.*  DCPS opposed the "stay-put" request, arguing that the Lab School was no longer M.R.'s "current educational placement."  *Id.* Hearing Officer Keith Seat then concluded that M.R. was entitled to a "stay-put" order maintaining her placement at the Lab School during the pendency of her administrative challenge to DCPS's decision not to fund that placement for the 2018–19 school year.  *Id.* at 33.  The parties eventually reached a settlement agreement in which DCPS agreed to fund M.R.'s placement at the Lab School through the end of the 2018–19 school year.  *See* Pls.' Ex. 6, ECF No. 10-2 at 37–38.

Essentially the same pattern recurred the following school year.  In August 2019, L.R. notified DCPS that she intended to keep M.R. at the Lab School for the 2019–20 school year, asked that DCPS fund that placement, and invoked M.R.'s "stay-put" rights.  *See* Pls.' Ex. 7, ECF No. 10-2 at 39; Pls.' Ex. 8 (Nov. 2019 Stay-Put Order), ECF No. 10-2 at 41.  DCPS declined and

opposed the "stay-put" request.  *See* Nov. 2019 Stay-Put Order, ECF No. 10-2 at 43.  After an administrative hearing, Hearing Officer Michael Lazan agreed with L.R. that the Lab School was M.R.'s "current educational placement" and ordered that DCPS maintain her placement there until the administrative challenge was resolved.  *Id.* at 49.  In June 2020, the parties reached a settlement agreement resolving L.R.'s administrative complaint regarding the 2019–20 school year.  Pls.' Ex. 10, ECF No. 10-2 at 53–55; *see also* Pls.' Ex. 11, ECF No. 10-3 at 1.

A similar pattern unfolded yet again during the 2020–21 school year.  L.R. notified DCPS in August 2020 that she intended to keep M.R. at the Lab School, requested funding for that placement, and invoked M.R.'s "stay-put" rights.  *See* Pls.' Ex. 12, ECF No. 10-3 at 15; Pls.' Ex. 13 (Sept. 2020 Stay-Put Order), ECF No. 10-3 at 16–17.  DCPS declined and opposed the "stay-put" request.  *See* Sept. 2020 Stay-Put Order, ECF No. 10-3 at 20. After an administrative hearing, Hearing Officer Vaden ordered DCPS to maintain M.R.'s placement at the Lab School pending resolution of the administrative challenge to its decision not to fund her placement there for the full 2020–21 school year.  *Id.* at 21.  At L.R.'s request, Vaden later dismissed the administrative complaint as moot in May 2021, concluding that there was no longer any "effectual relief" that the administrative process could provide.  *See* Pls.' Ex. 15, ECF No. 10-3 at 63–64.

Meanwhile, DCPS developed a new IEP for M.R. in April 2021.  *See* Pls.' Ex. 14 (Apr. 2021 IEP), ECF No. 10-3 at 23–54; Feb. 2025 HOD, ECF No. 10-4 at 84.  The IEP team recommended a program including 20 hours per week of specialized instruction, three hours per month of occupational therapy services, four hours per month of speech-language pathology services, and two hours per month of behavioral support services, all to be delivered outside of the general education setting.  Apr. 2021 IEP, ECF No. 10-3 at 51.

Shortly after Hearing Officer Vaden dismissed L.R.'s complaint regarding placement for the 2020–21 school year, DCPS notified her that it did not intend to maintain M.R.'s placement at the Lab School following the date of Vaden's decision. *See* Pls.' Ex. 16, ECF No. 10-3 at 66–67. L.R. then filed yet another administrative complaint and argued that M.R. was entitled to a "stay-put" order preserving her placement at the Lab School through the end of the 2020–21 school year. Pls.' Ex. 17, ECF No. 10-3 at 68–74. In June 2021, Hearing Officer Vaden concluded that the Lab School continued to be M.R.'s "current educational placement" and ordered DCPS to maintain that placement through the end of the 2020–21 school year. Pls.' Ex. 18 (June 2021 Stay-Put Order), ECF No. 10-3 at 75–82.

The next year, both L.R. and DCPS cross-filed administrative complaints regarding the appropriateness of DCPS's proposed placement for M.R. for 2021–22. *See* Pls.' Ex. 19, ECF No. 10-3 at 83–84. L.R. again argued that M.R. should be placed at the Lab School and requested a "stay-put" order preserving her status there. *See id.* at 84, 87. DCPS opposed those requests and sought a ruling that a public middle school placement it had proposed for the 2021–22 school year based on the April 2021 IEP was appropriate. *See id.* at 84, 87. Hearing Officer Vaden again granted L.R.'s request for a "stay-put" order. *See id.* at 87 (Oct. 2021 Stay-Put Order). But after a hearing, Vaden concluded in October 2021 that the April 2021 IEP and DCPS's proposed placement at a public middle school were appropriate, meaning that DCPS had offered M.R. a FAPE and that it was therefore not required to continue to fund her placement at the Lab School. Pls.' Ex. 20 (October 2021 HOD), ECF No. 10-3 at 119.

L.R. and M.R. appealed Hearing Officer Vaden's October 2021 order to the District Court. *See* Compl., *M.R. v. District of Columbia*, Case No. 21-cv-2990, ECF No. 1 (D.D.C. filed Nov. 12, 2021). They filed a motion for a preliminary injunction to secure M.R.'s "stay-put" rights

pending resolution of the appeal.  *See* Pls.' Ex. 21, ECF No. 10-4 at 1.  DCPS did not oppose the motion.  *See id.*; Answer, ECF No. 8, ¶ 42.  Judge Tanya S. Chutkan then granted the unopposed motion by minute order, declared that the Lab School was M.R.'s "current educational placement," and ordered that DCPS maintain her placement there pending resolution of the appeal.  *See* Minute Order, *M.R. v. District of Columbia*, Case No. 21-cv-2990 (D.D.C. Dec. 3, 2021) (TSC).

The parties then filed cross-motions for summary judgment, which Judge Chutkan referred to Magistrate Judge Robin M. Meriweather for a Report and Recommendation.  *See* Minute Order, *M.R. v. District of Columbia*, Case No. 21-cv-2990 (D.D.C. Dec. 11, 2021) (TSC).  Magistrate Judge Meriweather recommended that each party's motion be granted in part and denied in part and that the case be remanded to the administrative hearing officer for further proceedings.  *See* Report and Recommendation, *M.R. v. District of Columbia*, Case No. 21-cv-2990 (D.D.C. Sept. 11, 2023) (RMM) (reproduced as Pls.' Ex. 22, ECF No. 10-4 at 2–43).  Specifically, Magistrate Judge Merriweather recommended a remand to reconsider whether the IEP should have included certain goals related to reading, including a goal related to phonemic awareness, as well as to reconsider whether L.R. was entitled to reimbursement of the cost of M.R.'s attendance at the Lab School.  *Id.* at 42.  Judge Chutkan adopted that recommendation and remanded the case to Hearing Officer Vaden in September 2023.  Order, *M.R. v. District of Columbia*, Case No. 21-cv-2990, ECF No. 20 (D.D.C. Oct. 16, 2023) (TSC) (reproduced as Pls.' Ex. 23, ECF No. 10-4 at 44–45).

On remand from the District Court to Hearing Officer Vaden, L.R. argued that the case was moot and should be dismissed.  *See* Pls.' Ex. 24, ECF No. 10-4 at 47.  DCPS opposed dismissal and urged the hearing officer to render a decision on the merits.  *Id.*  Vaden concluded that the District Court should decide the mootness issue and deferred further proceedings pending action by the District Court.  *Id.*  L.R. then filed a motion to dismiss the District Court case as moot.  *See*

Order, *M.R. v. District of Columbia*, No. 21-cv-2990 (D.D.C. July 23, 2024) (reproduced as Pls.' Ex. 25, ECF No. 10-4 at 49).  DCPS did not oppose the motion to dismiss in the District Court, and Judge Chutkan granted it in July 2024.  *Id.*  Vaden dismissed the associated administrative proceedings shortly thereafter.  *See* Pls.' Ex. 26, ECF No. 10-4 at 50–51.

Meanwhile, DCPS developed a new IEP for M.R. in September 2023.  *See* Feb. 2025 HOD, ECF No. 10-4 at 79.  This IEP called for M.R. to receive 20 hours per week of specialized instruction outside of the general education setting, three hours per month of occupational therapy, and three hours per month of behavioral support services.  *Id.*  It also called for the use of a variety of assistive devices and other interventions designed to help M.R. succeed in the classroom.  *Id.* at 79–80.  The next year, in September 2024, DCPS developed a similar IEP for M.R. that called for the same services, with the addition of one hour per week with a special education case manager.  *Id.* at 81–82.

The Lab School also developed its own IEP for M.R., which called for 32 hours per week of specialized instruction, three hours per month of occupational therapy, and six hours per month of speech-language pathology, all to be delivered outside of the general education setting.  Feb. 2025 HOD, ECF No. 10-4 at 80.

On the same day that Hearing Officer Vaden dismissed the administrative proceedings regarding DCPS's proposal for the 2021–22 school year, L.R. filed a new request for an administrative hearing regarding DCPS's proposals for the 2023–24 and 2024–25 school years, once again invoking M.R.'s "stay-put" rights.  *See* Pls.' Ex. 27 (Sept. 2024 Stay-Put Order), ECF No. 10-4 at 52–53.  DCPS did not agree to recognize the Lab School as M.R.'s "stay-put" placement.  *See id.* at 53.  L.R. therefore filed a motion to maintain her placement at the Lab School pending the resolution of the administrative challenge.  *See id.*  Hearing Officer Michael Lazan

granted that motion in September 2024, concluding that the Lab School was M.R.'s "current educational placement." *Id.* at 56–59.

L.R. later withdrew and refiled her administrative hearing request to incorporate additional issues that had arisen since her original filing. *See* Pls.' Ex. 28, ECF No. 10-4 at 60–61. She also filed a renewed motion to enforce M.R.'s "stay-put" rights to placement at the Lab School, which Hearing Officer Lazan granted in October 2024. Pls.' Ex. 29 (Oct. 2024 Stay-Put Order), ECF No. 10-4 at 62–67. Later, following an administrative hearing that lasted five days and included testimony from 10 witnesses, Lazan denied L.R.'s request for relief in full, concluding that DCPS had offered M.R. a FAPE during the 2024–25 school year. *See* Pls.' Ex. 30 (Feb. 2025 Hearing Officer Determination "HOD"), ECF No. 10-3 at 71–72, 92–95.

In February 2025, L.R. and M.R. filed this civil action against the District of Columbia to appeal Hearing Officer Lazan's decision on the merits. *See* Compl., ECF No. 1. The Plaintiffs have now moved for a preliminary injunction to preserve M.R.'s "stay-put" placement at the Lab School until this case is resolved. *See* Pls.' Mot., ECF No. 10. The District opposes that motion and has filed a cross-motion for a preliminary injunction seeking to "override" M.R.'s invocation of her "stay-put" rights under the IDEA. *See* Def.'s Opp'n and Mot., ECF No. 12. These motions are now ripe for decision.

## II. LEGAL STANDARD

The IDEA's "stay-put" provision entitles a qualified plaintiff to an "automatic statutory injunction" to preserve a child's "then-current educational placement" while an appeal of an administrative decision is pending in the district court. *See Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519, 527 (D.C. Cir. 2019); 20 U.S.C. § 1415(j). The two requirements for such an injunction are that (1) "an administrative due process proceeding is 'pend[ing],'" and (2) "the local educational agency is attempting to alter the student's 'then-current educational placement.'" *Olu-*

*Cole*, 930 F.3d at 527 (alteration in original) (quoting 20 U.S.C. § 1415(j)). If these two requirements are satisfied, the plaintiff is entitled to an "automatic" statutory injunction under the IDEA without showing an entitlement to relief under the traditional four-factor test for equitable preliminary injunctions. *See id.*; *Andersen*, 877 F.2d at 1023–24.

However, a local educational authority may "invoke the court's equitable power to jam the 'automatic' statutory trigger for injunctive relief" under the IDEA by carrying the "heavy burden" of showing an entitlement to relief under the traditional four-factor test for an equitable preliminary injunction. *Olu-Cole*, 930 F.3d at 527; *see also* 20 U.S.C. § 1415(i)(2)(C)(iii) (authorizing a reviewing court to "grant such relief as the court determines is appropriate"). Such an injunction "derail[s] the statute's ordinary operation" and is an "'extraordinary and drastic'" remedy that "should be withheld 'unless the [local educational authority]' carries its heavy burden '*by a clear showing*' of irreparable harm." *Id.* at 528–29 (emphasis in original) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). To make this showing, a local educational authority must establish "that maintaining the child in his or her current placement is substantially likely to result in injury either to himself or herself, or to others." *Honig*, 484 U.S. at 328. A local educational authority's heavy burden in this posture is "consistent with the presumption created by Congress that a child should remain in the then-current educational placement" pending resolution of administrative proceedings. *Wagner v. Bd. of Educ. of Montgomery Cnty.*, 335 F.3d 297, 302 (4th Cir. 2003). District courts must be "extremely cautious" when evaluating whether a local educational authority has overcome the IDEA's "strong presumption" in favor of preserving that placement. *Id.* at 302–03.

Under the traditional four-factor test for equitable preliminary injunctive relief, the party seeking an injunction must show (1) that it is "likely to succeed on the merits," (2) that it is "likely

to suffer irreparable harm in the absence of preliminary relief," (3) that "the balance of equities tips in [its] favor," and (4) that "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### III. DISCUSSION

**A.    M.R.'s "current educational placement" is the Lab School.**

Plaintiffs M.R. and L.R. are entitled to a statutory "stay-put" injunction under the IDEA if (1) "an administrative due process proceeding is 'pend[ing],'" and (2) the District is "attempting to alter" M.R.'s "current educational placement." *Olu-Cole*, 930 F.3d at 527.  There is no dispute that an administrative due process proceeding remains "pending" until this Court resolves this case.  *See Andersen*, 877 F.2d at 1023–24.  Accordingly, in this case, as in most similar cases, the effect of the IDEA's "stay-put" provision "depends predominantly on the determination of what constitutes [the student's] 'current educational placement.'"  *See Leonard by Leonard v. McKenzie*, 869 F.2d 1558, 1563–64 (D.C. Cir. 1989); *see also Wagner*, 335 F.3d at 301.

The IDEA does not define "current educational placement."  *See* 20 U.S.C. §§ 1401, 1415(j).  In the absence of a statutory definition, courts have generally interpreted the term to refer to the "the last agreed upon placement at the moment when the due process proceeding is commenced."  *See, e.g.*, *Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 324 (S.D.N.Y. 2005).  Accordingly, courts usually look to "the last unchallenged IEP" to determine a child's "current" placement.  *See id.*

When there is no operative IEP or other agreement on the child's placement, courts must resort to gap-filling rules to determine the "current" placement.  As relevant to this case, courts have held that if a child "lacks a functioning IEP and attends a non-public school selected by the parent, the non-public school qualifies as the 'then-current educational placement' for stay-put purposes" as long as an administrative hearing officer "'made findings on the merits that the school

system had failed to provide a FAPE and the private program chosen by the parents was appropriate.'" *Wimbish*, 153 F. Supp. 3d at 11 (quoting *District of Columbia v. Vinyard*, 901 F. Supp. 2d 77, 86 (D.D.C. 2012) (CKK)); *see also Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 372 (1985) (noting that an administrative adjudication approving a placement "would seem to constitute agreement by the State to the change of placement"); 34 C.F.R. § 300.518(d) (providing that an administrative decision that "agrees with the child's parents that a change of placement is appropriate" has the same effect as an agreement between the State and the parents to change the child's placement).

In this case, the Plaintiffs argue that the Lab School is M.R.'s "current educational placement" because there is no agreed-upon IEP naming a placement for M.R. and the Lab School is the most recent placement approved through a final disposition of a contested administrative adjudication. *See* Pls.' Mot. at 11. This argument is persuasive and supported by the record.

As three different administrative hearing officers and one other judge of this District have concluded, Hearing Officer Vaden's decision in June 2017 directing DCPS to pay for M.R.'s placement at the Lab School functions as an implied agreement that the Lab School was M.R.'s "current educational placement" for purposes of the IDEA's "stay-put" provision.[4] M.R. has been continuously attending the Lab School ever since that decision, and there have been no intervening agreements or adjudicative decisions that have changed its status as her "current educational placement." *See* Oct. 2024 Stay-Put Order, ECF No. 10-4, at 65. Accordingly, the Lab School continues to be M.R.'s current placement for purposes of the "stay-put" analysis.

---

[4] *See* Oct. 2018 Stay-Put Order, ECF No. 10-2 at 33; Nov. 2019 Stay-Put Order, ECF No. 10-2 at 49; Sept. 2020 Stay-Put Order, ECF No. 10-3 at 21; June 2021 Stay-Put Order, ECF No. 10-3 at 82; Oct. 2021 Stay-Put Order, ECF No. 10-3 at 87; Minute Order, *M.R. v. District of Columbia*, Case No. 21-cv-2990 (D.D.C. Dec. 3, 2021) (TSC); Sept. 2024 Stay-Put Order, ECF No. 10-4 at 52–53; Oct. 2024 Stay-Put Order, ECF No. 10-4 at 65; *see also* June 2017 HOD, ECF No. 10-2 at 24–25 (concluding that L.R.'s "choice of [the Lab School] for [M.R.] was proper under the IDEA" and ordering DCPS to reimburse the cost of M.R.'s placement there from March 2017 through the end of academic year 2016–17 school year).

The District's strongest contrary argument is that Hearing Officer Vaden's June 2017 decision approving reimbursement at the Lab School was a time-bounded remedy that expired at the end of the 2016–17 school year. *See* Def.'s Opp'n and Mot. at 13–17. According to the District, the time limit on reimbursement in the June 2017 order means that the Lab School ceased to be M.R.'s "current educational placement" after the 2016–17 school year. *See id.*

The District is correct that a child's "current educational placement" is not necessarily the physical location where the child has most recently been attending school. *See Johnson v. District of Columbia*, 839 F. Supp. 2d 173, 177 (D.D.C. 2012) (CKK). The decision of the D.C. Circuit Court of Appeals in *Leonard by Leonard v. McKenzie*, 869 F.2d 1558 (D.C. Cir. 1989), illustrates this point. In that case, the D.C. Circuit considered whether a private school placement approved by an administrative hearing officer as a temporary remedy for "procedural violations" by an educational agency continued to be the student's "current educational placement" after the period for the temporary remedy had expired. *Id.* at 1564. The court concluded that the private school "cease[d] to be [the student's] 'current educational placement'" when the temporary remedy expired, noting that the hearing officer had warned the parties that the placement was temporary and that the student would be placed in a different school for the following academic year. *Id.* Under those circumstances, parents' "unilateral decision to maintain [the student] at" the private school during the following year did not make the private school the "current educational placement," even though the student was attending school there. *Id.* The court concluded that the student was therefore not entitled to a stay-put injunction to maintain the student's placement at the private school going forward. *See id.*

However, the District's argument falters because in this case, unlike in the several cases on which the District relies, the administrative decision in June 2017 awarding temporary funding for

a private school placement did not simultaneously approve a future placement for the child. *Cf. Leonard*, 869 F.2d at 1564; *Doe v. Portland Pub. Sch.*, 30 F.4th 85, 91 (1st Cir. 2022); *A.W. v. Bd. of Educ. Wallkill Cent. Sch. Dist.*, No. 14-cv-1583, 2015 WL 3397936, at *5 (N.D.N.Y. May 26, 2015). Instead, Hearing Officer Vaden's June 2017 order directed DCPS to revise M.R.'s IEP to provide for all "academic courses," except for "specials" like "art and music," to be delivered in a "small classroom setting, outside general education," as they are at the Lab School. June 2017 HOD, ECF No. 10-2 at 25–26. Although Vaden noted that DCPS would not necessarily be "required to continue to pay for a private placement" after the 2016–17 school year, his order made clear that any change to M.R.'s private placement was conditional on DCPC identifying "a *suitable* public school program" as an alternative placement. *See id.* at 25 (emphasis added). Because Vaden's order did not find that DCPS had offered a "suitable" placement other than the Lab School, his decision could not have established any other program as M.R.'s "current educational placement." *See id.* at 24–25. Accordingly, because Vaden found that L.R.'s "choice of [the Lab School] for [M.R.] was proper under the IDEA," his decision established the Lab School as M.R.'s "current educational placement," notwithstanding the fact that it only required DCPS to reimburse the cost of that placement through the end of the 2016–17 school year. *See id.* at 24–25.

The District briefly sets out an alternative argument against treating the Lab School as M.R.'s "current educational placement," but this argument is also unsuccessful. *See* Def.'s Opp'n and Mot. at 16–17; Def.'s Reply at 3–4. This argument focuses on the October 2021 administrative decision finding that DCPS had offered M.R. a FAPE in the IEP it proposed in April 2021, which DCPS proposed to implement at a public middle school. *See id.*; October 2021 HOD, ECF No. 10-3 at 119. Judge Chutkan affirmed that decision in part on appeal. Order, *M.R. v. District of Columbia*, Case No. 21-cv-2990, ECF No. 20 (D.D.C. Oct. 16, 2023) (TSC) (reproduced as Pls.'

Ex. 23, ECF No. 10-4 at 44–45). The District suggests that the decisions approving of the April 2021 IEP show that the Lab School is no longer M.R.'s "current educational placement." *See* Def.'s Reply at 3–4. However, because Judge Chutkan affirmed the administrative decision regarding the April 2021 IEP only in part and remanded part of the decision for further administrative proceedings before dismissing the case, there was no final disposition of the merits of the 2021 administrative complaint and no resulting implied agreement to change M.R.'s "current educational placement." *See* Pls.' Ex. 23, ECF No. 10-4, at 45; *cf. Vinyard*, 901 F. Supp. 2d at 88; 34 C.F.R. § 300.518(d). Accordingly, M.R.'s "current educational placement" remains the Lab School, as it has been since Hearing Officer Vaden's June 2017 administrative decision approving reimbursement of the cost of her attendance there.

In sum, the Lab School is M.R.'s "current educational placement." Accordingly, the Plaintiffs are entitled to an automatic statutory injunction preserving her placement at the Lab School while this Court resolves her appeal of the administrative decision. *See Olu-Cole*, 930 F.3d at 527; 20 U.S.C. § 1415(j). The Court shall therefore grant the Plaintiffs' Motion for a Preliminary Injunction.

### B.    The District has not carried the heavy burden of showing that M.R. should be placed somewhere other than the Lab School while this case proceeds.

The District argues in the alternative that even if the Plaintiffs are entitled to a statutory "stay-put" injunction under the IDEA, this Court should exercise its equitable powers to halt the operation of the "stay-put" provision. *See* Def.'s Opp'n and Mot. at 17–25. To be entitled to equitable relief of this kind, the District must show that it is likely to prevail on the merits, that it will suffer irreparable harm in the absence of an injunction, that the balance of equities tips in its favor, and that an injunction would serve the public interest. *Winter*, 555 U.S. 20; *Olu-Cole*, 930 F.3d at 527. A party seeking equitable relief to displace the IDEA's automatic "stay-put"

injunction, like any party seeking an equitable preliminary injunction, must carry a "heavy burden." *See Olu-Cole*, 930 F.3d at 527. Although the District advances some persuasive arguments for preliminary relief, on the present record, it has not carried its substantial burden.

The District argues that it is likely to prevail on the merits for two reasons. First, it argues that this Court owes deference to the recent administrative decision in the District's favor regarding the appropriateness of its proposed IEP for the 2024–24 school year. *See* Def.'s Mot. at 17–18. Second, the District cites decisions by two district judges, two magistrate judges, and two hearing officers finding that IEPs similar to the one DCPS proposed for the 2024–25 school year were appropriate and would have provided M.R. a FAPE. *See* Def.'s Mot. at 18–22. The District argues that these prior decisions support a finding that it is likely to succeed in showing that M.R. does not require placement in a full-time special education program like the Lab School. *Id.* at 22.

The District also argues that it will suffer irreparable harm if this Court does not award a preliminary injunction in its favor because the IDEA provides no mechanism for the recovery of tuition or related costs paid for private education during a "stay-put" placement that ends with a decision in the District's favor. *See* Def.'s Mot. at 22–24.

Finally, the District argues that the balance of the equities tips in its favor and that an injunction would serve the public interest because a continued obligation to fund a "stay-put" placement at the Lab School would deprive the District of both the opportunity to provide M.R. with a less-restrictive placement at a public school and resources it might otherwise use to provide a private placement for another student who requires it. *See* Def.'s Mot. at 24–25. The District also argues that the equities tip in its favor because the Plaintiffs have "exploited" the IDEA's "stay-put" provision by strategically filing, amending, and dismissing administrative challenges to prolong M.R.'s placement at the Lab School. *See id.* at 25.

Although there is some force to each of the District's arguments for an injunction in its favor, on the whole, the District has not carried the "heavy burden" of showing an entitlement to equitable relief "to jam the 'automatic' statutory trigger" for "stay-put" relief under the IDEA. *Olu-Cole*, 930 F.3d at 527.

*First*, the many prior decisions in the District's favor regarding administrative challenges to the appropriateness of M.R.'s previous IEPs do not directly resolve whether the District is likely to prevail on the merits by showing that the IEP under review in *this* case was appropriate. Each IEP must be evaluated on its own merits, based on the facts and circumstances known at the time it was developed. *See Edward M.R.*, 128 F.4th at 294. Because the record underlying the IEP at issue here was necessarily different than the record underlying any of the IEPs that preceded it, the dispositions of the Plaintiffs' prior cases do not necessarily show that the District is likely to prevail on the merits in this case.

*Second*, there is little in the District's assertion of irreparable harm or its arguments about the equities and the public interest to differentiate this case from every other IDEA case in which plaintiffs assert their statutory "stay-put" rights. For example, this case is not one in which the District has shown that a failure to grant an equitable injunction is "substantially likely to result in injury either to [the student], or to others." *Cf. Honig*, 484 U.S. at 328. As the D.C. Circuit has observed, "the stay-put provision reflects Congress's considered judgment that children with disabilities are substantially harmed by and must be protected against school policies of unilateral disruption and exclusion." *Olu-Cole*, 930 F.3d at 529. "Any judicial decision to override that congressional judgment would be both 'extraordinary and drastic,' and should be withheld 'unless the [local educational authority]' carries its heavy burden '*by a clear showing* of irreparable harm.'" *Id.* (emphasis in original) (quoting *Mazurek*, 520 U.S. at 972). Although the District

raises legitimate concerns about the potential costs of dilatory litigation tactics that unfairly prolong "stay-put" injunctions, those concerns can be greatly mitigated by a timely ruling on the merits. *See* Def.'s Opp'n and Mot. at 25. If the District's forecast of success on the merits is accurate and the Court decides this case before the beginning of the new school year, many of the costs that the District predicts will never materialize. Accordingly, the parties should be prepared to litigate this case on an expedited basis and receive a decision on the merits before the beginning of the 2025–26 school year. On that timeline, the risk of irreparable harm to the District is greatly reduced and the equities and the public interest weigh in favor of a brief stay to prevent disruption of M.R.'s ongoing education at the Lab School.

In sum, the District has not shown that it is entitled to the "extraordinary and drastic" remedy of an equitable injunction displacing the automatic "stay-put" relief provided under the IDEA. *Olu-Cole*, 930 F.3d at 529 (quoting *Mazurek*, 520 U.S. at 972). Accordingly, the Court shall deny the District's Cross-Motion for a Preliminary Injunction. However, to mitigate any risk of harm that may result from an unduly prolonged "stay-put" injunction, the parties should be prepared to litigate the merits of this case on an expedited basis.

### IV. CONCLUSION

For the foregoing reasons, the Court shall **GRANT** the Plaintiffs' Motion for a Preliminary Injunction and **DENY** the Defendant's Cross-Motion. The Defendant shall continue to maintain and fund M.R.'s current educational placement at the Lab School of Washington, in accordance with 20 U.S.C. § 1415(j), until further order of this Court. An appropriate Order accompanies this Memorandum Opinion.



**Dated:** June 3, 2025

COLLEEN KOLLAR-KOTELLY
United States District Judge